ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
SONIA SINGH (State Bar No. 311080)
*ssingh@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Plaintiff Jerry Namba, Chapter 7
Trustee for the estate of Super98, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>SUPER98, LLC,<br><br>      Debtor. | Case No. 9:18-bk-12079-DS<br><br>Chapter 7 |
| JERRY NAMBA, Chapter 7 Trustee,<br><br>      Plaintiff,<br><br>vs.<br><br>BENTHAM IMF 1 LLC, a Delaware limited liability company; and SECURITY FINANCE 1 LLC, a Delaware limited liability company,<br><br>      Defendants. | Adv. No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF, AND AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFER** |

1571445.2  26891

# **TABLE OF CONTENTS**

**Page**

JURISDICTION AND VENUE ...............................................................................................1

THE PARTIES ........................................................................................................................1

OTHER RELEVANT PERSONS AND ENTITIES ................................................................2

GENERAL ALLEGATIONS ...................................................................................................2

    The Debtor's Lawsuit Against Delta Air Lines ..................................................................2

    Bentham's $1 Million Advance to the Debtor ...................................................................3

    The Materially Misleading Financing Statement ..............................................................4

    The Debtor's Settlement with Delta ...................................................................................5

    The Distribution Agreement and $2 Million Payment to Bentham or Security
        Financing on Behalf of Bentham ..................................................................................5

CLAIMS AGAINST BENTHAM AND SECURITY FINANCE .............................................6

    First Claim for Relief (Declaratory Relief – Security Finance UCC-1) .............................6

    Second Claim for Relief (Declaratory Relief – Priority or Avoidability of Security
        Interest) ...........................................................................................................................7

    Third Claim for Relief (Avoidance and Recovery of Preferential Transfer) ......................8

PRAYER ...................................................................................................................................8

Plaintiff Jerry Namba, chapter 7 trustee for the estate of Super98, LLC, alleges as follows:

### JURISDICTION AND VENUE

1. On December 17, 2018 (the "Petition Date"), an involuntary petition for relief (the "Petition") was filed against Super98, LLC (the "Debtor") under chapter 7 of the title 11 of the United States Code (the "Code"). An *Order for Relief and Order to File Schedules, Statements and List(s)* (the "Order for Relief") was entered on February 8, 2019. The Debtor's bankruptcy case, *In re Super98, LLC* (the "Case"), has been assigned case no. 9:18-bk-12079-DS and is pending in the Northern Division of the United States Bankruptcy Court for the Central District of California (the "Court").

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 13-05 entered by the United States District Court for the Central District of California pursuant to 28 U.S.C. § 157(a). All of the claims for relief alleged in this Complaint arise under the Code, arise in the Case, and/or are related to the Case.

3. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (K) and (O). Plaintiff consents to entry of final orders and judgment by the Court.

4. Venue for this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

### THE PARTIES

5. Plaintiff Jerry Namba is the duly appointed and acting chapter 7 trustee for the Debtor's bankruptcy estate. In such capacity, Mr. Namba is referred to herein as the "Trustee."

6. Defendant Bentham IMF 1 LLC ("Bentham") is a limited liability company formed under the laws of the state of Delaware. Bentham provides commercial litigation funding for litigants and law firms.

7. Defendant Security Finance 1 LLC ("Security Finance") is a limited liability company formed under the laws of the state of Delaware.

8. Bentham and Security Finance are subsidiaries of IMF Bentham Limited.

9. With respect to at least some of the loans made by Bentham to litigants and law firms, Security Finance acted as a "collateral agent" for Bentham.

## OTHER RELEVANT PERSONS AND ENTITIES

10. At all relevant times, Robert D. Hesselgesser, M.D. ("Dr. Hesselgesser") was the Debtor's Chief Executive Officer. Dr. Hesselgesser is a debtor in a separate chapter 7 bankruptcy case filed on August 31, 2017, case no. 9:17-bk-11579-DS. If necessary and appropriate to do so, the Trustee reserves the right to amend this complaint to add Dr. Hesselgesser and/or his estate as a defendant.

11. At all relevant times, Walter Knauss ("Knauss") was the Debtor's Chief Financial Officer. Knauss is a debtor in a separate chapter 7 bankruptcy case filed on December 10, 2019, case no. 9:19-bk-12036-MB. If necessary and appropriate to do so, the Trustee reserves the right to amend this complaint to add Knauss and/or his estate as a defendant.

12. Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), is a law firm with offices throughout the United States, including one in Chicago, Illinois.

## GENERAL ALLEGATIONS

### The Debtor's Lawsuit Against Delta Air Lines

13. At all relevant times, the Debtor was in the business of developing and selling "drag reduction" products designed to improve the fuel efficiency of certain McDonnell Douglas aircraft.

14. In September 2014, the Debtor and Delta Air Lines, Inc. ("Delta") entered into a contract (the "Delta Contract"). Shortly after executing the Delta Contract, Delta issued purchase orders that required the Debtor to manufacture and deliver drag reduction systems ("Systems") to Delta on a tight schedule. The Debtor began delivering Systems to Delta in January 2015.

15. According to the Debtor, Delta breached the Delta Contract in November 2015.

16. In May 2016, the Debtor filed a complaint against Delta in the United States District Court for the Northern District of Georgia, case no. 1:16-cv-1535 (the "Delta Litigation").

17. The Debtor was principally represented in the Delta Litigation by Quinn Emanuel.

**Bentham's $1 Million Advance to the Debtor**

18. By the end of December 2017, the Debtor owed Quinn Emanuel more than $1.8 million. Quinn Emanuel put the Debtor in touch with Bentham so that the Debtor could acquire funds from Bentham to pay Quinn Emanuel.

19. The Debtor, Bentham, and Security Finance entered into a *Litigation Funding Agreement* (the "Bentham Agreement") dated April 2, 2018.

20. Under the Bentham Agreement:

(a) Bentham agreed to pay the Debtor $1,000,000.

(b) The Debtor was required to use the funds pay "Litigation Fees" incurred by Quinn Emanuel.

(c) The term "Claims" was defined to mean the claims that the Debtor had against Delta in connection with the Delta Litigation.

(d) The term "Litigation Proceeds" generally was defined to mean any and all consideration paid to or for the benefit of the Debtor by or on behalf of Delta in connection with the Delta Litigation. However, because Delta had already agreed to remit a certain amount to the Debtor, the term "Litigation Proceeds" did not include $761,183 that was still to be paid by or on behalf of Delta.

(e) From the "Litigation Proceeds," the Debtor agreed to pay Bentham an "Investment Return." The amount of the "Investment Return" depended solely on how soon the Debtor paid Bentham after the date of the Bentham Agreement. The following chart identifies the amount of the Investment Return the Debtor was required to pay during each time period:

| Time to Payment | "Investment Return" |
| --- | --- |
| Within 120 days (5/11/18) | $1,650,000 |
| After 120 days but within 1 year (1/11/19) | $2,000,000 |
| After 1 year but within 18 months (7/11/19) | $2,500,000 |
| After 18 months but within 2 years (1/11/20) | $3,000,000 |
| After 2 years but within 30 months (7/11/20) | $3,500,000 |
| After 30 months | $4,000,000 |

(f) The Debtor granted Security Finance, on behalf of Bentham, a security interest in the "Claims" and the "Litigation Proceeds." In particular, Section 12.1 of the General Terms and Conditions incorporated into the Bentham Agreement provided as follows:

> <u>Grant of Security Interest</u>. As security for the payment and performance in full of the Secured Obligations, Claimant hereby grants, assigns and pledges to Collateral Agent for the benefit of Bentham, its successors and assigns, a security interest, in any and all right, title or interest of Claimant in or to any and all of the following assets and properties now owned or at any time hereafter acquired by Claimant or in which Claimant now has or at any time in the future may acquire any right, title or interest (collectively, the "*Collateral*"):
>
> 12.1.1 the Claims;
>
> 12.1.2 the Litigation Proceeds;
>
> 12.1.3 all books, records and evidentiary materials pertaining to the Claims; and
>
> 12.1.4 to the extent not otherwise included, all Proceeds of any and all of the foregoing.

(g) The Bentham Agreement is governed by and construed in accordance with the laws of the State of California applicable to contracts entered into an fully to be performed in California.

21. On or about April 6, 2018, Bentham paid $1,000,000 to the Debtor by transferring that amount to Quinn Emanuel's client trust account. The $1,000,000 deposited into the client trust account is referred to herein as the "<u>Bentham Proceeds</u>."

**The Materially Misleading Financing Statement**

22. The Debtor authorized Security Finance to file a UCC-1 financing statement indicating the "Collateral" as collateral covered by the financing statement. In particular, Section 12.3 of the General Terms and Conditions incorporated into the Bentham Agreement provided, in relevant part, as follows:

> <u>Financing Statements</u>. Claimant hereby irrevocably authorizes Collateral Agent at any time and from time to time to file in any file office in any jurisdiction that Collateral Agent deems advisable: (a) any Uniform Commercial Code financing statement providing the name of Claimant as debtor, Collateral Agent as secured party and

1571445.2  26891                                        4

        indicating the Collateral as collateral covered by the financing statement . . . .

23. On April 25, 2018, Security Finance filed a UCC Financing Statement with the California Secretary of State (the "Security Finance UCC-1"). The collateral description in the Security Finance UCC-1 read as follows: "All assets."

24. The Debtor did not sign the Security Finance UCC-1.

25. The Debtor did not, at any time, grant Bentham or Security Finance a security interest in all of its assets.

26. The Debtor did not, at any time, authorize Bentham or Security Finance to file an "all assets" financing statement.

### The Debtor's Settlement with Delta

27. On or about October 11, 2018, the Debtor and Delta entered into a confidential *Settlement Agreement and Mutual Release* (the "Delta Settlement Agreement").

28. The Delta Settlement Agreement provided that Delta would pay the Debtor a certain amount (the "Settlement Amount"). The Settlement Amount was transferred into Quinn Emanuel's client trust account on or about November 13, 2018. These funds are referred to hereinafter as the "Delta Settlement Proceeds."

29. A stipulation for dismissal was filed in the Delta Litigation on November 26, 2018.

### The Distribution Agreement and $2 Million Payment to Bentham
### or Security Financing on Behalf of Bentham

30. On or about October 11, 2018, the Debtor entered into a *Distribution Agreement* (the "Distribution Agreement") with, among others, Quinn Emanuel and Security Finance.

31. The Distribution Agreement provided that if the Debtor reached an agreement with Delta for the Settlement Amount, the parties to the Distribution Agreement agreed to a distribution of the settlement proceeds on the terms set forth therein.

1571445.2  26891       5

32. On or about November 21, 2018, pursuant to the Distribution Agreement, Bentham, or Security Finance on behalf of Bentham, was paid $2,000,000 (the "Bentham Payment").

33. No portion of the Settlement Amount was paid from Quinn Emanuel's client trust account to the Debtor or any creditor who was not a party to the Distribution Agreement.

## CLAIMS AGAINST BENTHAM AND SECURITY FINANCE

### First Claim for Relief

(Declaratory Relief – Security Finance UCC-1)

(28 U.S.C. § 2201)

34. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 33, inclusive.

35. An actual controversy exists between the Trustee, on the one hand, and Bentham and Security Finance, on the other hand, regarding the Security Finance UCC-1.

36. Under California Commercial Code § 9509, with one exception, a person may file an initial financing statement only if the debtor authorizes the filing. The Trustee contends that the Debtor only authorized Security Finance to file a financing statement identifying the "Collateral" (as defined in the Bentham Agreement) as the collateral covered by the financing statement. The Debtor did not authorize Security Finance to file a financing statement stating that it had a security interest in all assets of the Debtor. The filing of an "all assets" financing statement was, as a matter of fact and law, unauthorized.

37. Under California Commercial Code § 9502, a financing statement is sufficient only if, among other things, it correctly "indicates the collateral covered by the financing statement." The statement in the Security Finance UCC-1 that Security Finance has a security interest in "[a]ll assets" of the Debtor is, and all times has been, false. The Security Finance UCC-1 is materially and seriously misleading, and was ineffective to perfect Security Finance's security interest in the Collateral (as defined in the Bentham Agreement).

38. A judicial determination is necessary and appropriate at this time so that the rights and interests of the Trustee, on the one hand, and Bentham and Security Finance, on the other hand, may be determined.

### Second Claim for Relief

(Declaratory Relief – Priority or Avoidability of Security Interest)

(28 U.S.C. § 2201 and 11 U.S.C. § 544)

39. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 33, and 35 through 37, inclusive.

40. An actual controversy exists between the Trustee, on the one hand, and Bentham and Security Finance, on the other hand, regarding the priority, relative to the Trustee, of Security Finance's security interest in the Delta Settlement Proceeds.

41. Under § 544(a)(1) of the Code, the Trustee has, as of the Petition Date, the rights and powers of, or may avoid any transfer of property of the Debtor that is voidable by, "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists."

42. Under § 544(a)(2) of the Code, the Trustee has, as of the Petition Date, the rights and powers of, or may avoid any transfer of property of the Debtor that is voidable by, "a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists."

43. The Trustee contends that if the Bentham Payment had not been made, the Trustee's rights as a hypothetical lien and execution creditor under § 544(a)(1) and (2) of the Code would be superior to Bentham's and Security Finance's unperfected security interest in the Delta Settlement Proceeds. Also, or in the alternative, the Trustee would be entitled to avoid Bentham's and Security Finance's unperfected security interest.

44. A judicial determination is necessary and appropriate at this time so that the rights and interests of the Trustee, on the one hand, and Bentham and Security Finance, on the other hand, may be determined.

### Third Claim for Relief

(Avoidance and Recovery of Preferential Transfer)

(11 U.S.C. §§ 547 and 550)

45. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 33, 35 through 37, and 40 through 43, inclusive.

46. The Bentham Payment was a transfer of an interest of the Debtor in property.

47. The Bentham Payment was made to or for the benefit of a creditor.

48. The Bentham Payment was made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

49. The Bentham Payment was made while the Debtor was insolvent.

50. The Bentham Payment was made within 90 days before the Petition Date.

51. The Bentham Payment enabled Bentham to receive more than it would receive if the transfer had not been made and Bentham received payment of such debt to the extent provided by the Code.

52. Pursuant to 11 U.S.C. §§ 547 and 550, the Trustee is entitled to avoid the Bentham Payment and recover the sum of $2,000,000 from Bentham.

### PRAYER

WHEREFORE, the Trustee prays for the following relief:

**On the First Claim for Relief:**

1. For a declaration that the Debtor did not grant Bentham or Security Finance a security interest in all assets of the Debtor;

1571445.2  26891                                8

2. For a declaration that neither Bentham nor Security Finance was authorized to file a Financing Statement stating that it had a security interest in all assets of the Debtor; and

3. For a declaration that the collateral description in the Security Finance UCC-1 was materially and seriously misleading, and was ineffective to perfect any security interest granted by the Debtor to Bentham or Security Finance.

**On the Second Claim for Relief:**

1. For a declaration that if the Bentham Payment had not been made, the Trustee's rights as a hypothetical lien and execution creditor under 11 U.S.C. § 544(a)(1) and (2) of the Code would be superior to Bentham's and Security Finance's unperfected security interest in the Delta Settlement Proceeds; and

2. In the alternative, for a determination that the Trustee, by virtue of his rights as a hypothetical lien and execution creditor under 11 U.S.C. § 544(a)(1) and (2) of the Code, would be entitled to avoid Bentham's and Security Finance's unperfected security interest.

**On the Third Claim for Relief:**

1. For avoidance of the Bentham Payment;
2. For a money judgment against Bentham in the amount of $2,000,000; and
3. For an award of interest at the legal rate on all sums awarded from the date of the filing of the complaint.

///
///
///
///
///
///
///
///

1571445.2  26891                                9

**On all Claims for Reliefs:**

    1.    For costs of suit incurred; and

    2.    For such other relief as the Court deems just and proper.

DATED: January 8, 2020                DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:    */s/ John N. Tedford, IV*
          JOHN N. TEDFORD, IV
          Attorneys for Plaintiff Jerry Namba,
          Chapter 7 Trustee

**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>JERRY NAMBA, Chapter 7 Trustee | **DEFENDANTS**<br>BENTHAM IMF 1 LLC, a Delaware limited liability company; and SECURITY FINANCE 1 LLC, a Delaware limited liability company |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>DANNING, GILL, ISRAEL & KRASNOFF, LLP<br>1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006<br>310-277-0077 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>1 – Declaratory Relief (28 U.S.C. § 2201); 2 – Avoidance & Recovery of Preferential Transfer (11 U.S.C. §§ 547 and 550) ||

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>[2] 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other<br><br>**FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>[1] 21-Validity, priority or extent of lien or other interest in property<br><br>**FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)<br><br>**FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e)<br><br>**FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation<br><br>**FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br>**(continued next column)** | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)<br>☐ 65-Dischargeability - other<br><br>**FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other<br><br>**FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest<br><br>**FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment<br><br>**FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand  $2,000,000 |
| Other Relief Sought ||

1572300.1  26891

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR  SUPER98, LLC | BANKRUPTCY CASE NO.  9:18-bk-12079-DS |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT OF CALIFORNIA | DIVISION OFFICE<br>NORTHERN DIVISION | NAME OF JUDGE<br>SALTZMAN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*[signature: John Tedford IV]*

| DATE<br>1/07/2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>JOHN N. TEDFORD, IV |
|---|---|

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1572300.1  26891